**IN THE DISTRICT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| ABIEL OSORIO COTTO, BENJAMIN OSORIO, LUIS ENRIQUE CAMACHO MATTOS, DAVID PAUL GAUTREAUX, JEREMY SANTOS RAMIREZ, NORBERTO RIVERA FRESE, RAFAEL ERNESTO PASTRANA LUGO, and DAVID LAMBERT, | Case No. 3:21-CV-00016-RAM-RM |
| Plaintiffs, | COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF |
| v. | |
| TJ SUTTON ENTERPRISES, LLC D/B/A TJ SUTTON, LLC, AECOM, INC., AECOM CARIBE, LLP, CITADEL RECOVERY SERVICES, LLC, BLUEWATER CONSTRUCTION, INC. D/B/A BLUEWATER STAFFING COMPANY, THOMAS J. SUTTON, CELESTINO A. WHITE, SR., D/B/A CELESTINO WHITE CONSULTING & MANAGEMENT FIRM, LEONARD RAMSEY, and JANE DOE (landlord), | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE THE MEDIATED SETTLEMENT AGREEMENT**

## INTRODUCTION

In early 2019, Plaintiffs were recruited to the United States Virgin Islands (the "USVI") to perform disaster recovery work on FEMA-funded projects after hurricanes Irma and Maria. (*See* ECF No. 1). Plaintiffs allege they worked for 31 straight days under grueling and exploitative conditions, but were never paid any wages. (*Id.*, Ex. 1 ("Compl.") ¶ 68). When Plaintiffs complained about not being paid, they allege Defendants threatened and coerced them to keep working. (*Id.* ¶ 150–61). Defendants generally deny these allegations. On November 22, 2020, Plaintiffs filed a Complaint in the Superior Court alleging violations of, *inter alia*, federal wage and hour, forced labor, and discrimination statutes; the case was then removed to this Court by Defendants Thomas J. Sutton and TJ Sutton Enterprises, LLC. (*Id.*).

After more than three years of litigation, both in this matter and other related proceedings, the parties agreed to participate in a mediation. On February 13, 2024, after more than 12 hours of mediation, the parties reached a written Mediated Settlement Agreement (the "MSA")[1] that was assented to by all parties. However, nearly 12 months after the MSA was reached, Defendants have neither signed a mutual release nor tendered the settlement payment as provided in the MSA. Indeed, nearly six years after helping to repair homes in the USVI, Plaintiffs still have not been paid any of their wages. (*See* Compl. ¶¶ 162–168; Declaration of Aaron Halegua, dated February 3, 2025 ("Halegua Decl." ¶ 9)).

Accordingly, Plaintiffs now bring this Motion requesting that the Court enforce the MSA by ordering the parties to comply with its terms. This Court and the courts of the Virgin Islands

---

[1] Defendant Citadel Recovery Services, LLC ("Citadel") previously filed a version of the MSA under seal (ECF No. 164). However, as noted in their Motion for Leave to File Revised Mediated Settlement Agreement Under Seal, there were a few revisions to the version that had been filed and Citadel therefore seeks to file the final, revised version of the MSA. (ECF No. 176). Accordingly, the defined term "MSA," as used in this filing, refers to the revised and final version that Citadel will be filing under seal, if permission is granted by the Court.

have routinely heard and granted motions to enforce mediated settlement agreements. *See, e.g.*, *Rivera v. Sharp*, No. 2008-0020, 2021 WL 2228492 (D.V.I. June 1, 2021), *aff'd,* No. 21-2254, 2022 WL 271869 (3d Cir. July 13, 2022); *Herman v. Bank of Nova Scotia*, No. 2002-163, 2012 WL 4476656 (D.V.I. Sept. 28, 2012); *Siclari v. CBI Acquisitions, LLC*, No. CV 2015-28, 2017 WL 937728 (D.V.I. Mar. 9, 2017), *judgment entered*, No. CV 2015-28, 2017 WL 970281 (D.V.I. Mar. 10, 2017), *and dismissed*, No. 17-1581, 2018 WL 11437704 (3d Cir. Apr. 25, 2018). *See also* *Hendricks v. Clyne*, 2019 VI SUPER 14U (V.I. Super. Feb. 8, 2019); *Govia v. Burnett*, No. CIV 685/1998, 2003 WL 21104925 (Terr. V.I. May 5, 2003). Similarly, the MSA in this matter is enforceable because it involves adequate consideration and the parties all assented to its terms. Therefore, the Court should enforce the MSA by requiring the Defendants to execute mutual releases and pay to Plaintiffs the agreed-upon sum.

## BACKGROUND

This case ("*Cotto I*") was initially filed in the Virgin Islands Superior Court, Division of St. Thomas and St. John on November 22, 2020, and bearing Case No. ST-2020-CV-0045. It was removed to this Court on February 11, 2021. By order dated July 19, 2021, this Court granted the Defendants' motion to stay proceedings and compel arbitration. (ECF No. 69). There is also a pending Superior Court matter, Case No. ST-2022-CV-00073 ("*Cotto II*"), and a consolidated arbitration before the American Arbitration Association, AAA Nos. 01-21-0003-8057 and 01-22-0002-8011 ("*Cotto* Arbitrations"), which largely involve the same parties and similar claims.

In early 2024, the parties agreed to participate in a mediation session with David E. Nichols, Esq. ("Nichols"). The parties all executed the standard Agreement to Mediate used by the American Mediation Institute. (*See* ECF No. 164-1). This agreement generally provides that communications during the mediation proceeding shall be confidential, but makes an exception

for "the disclosure of any settlement agreement, which is ultimately singed by the parties to the mediation." (*Id.* at 1–2).

On February 13, 2024, the parties engaged in a mediation session with Nichols. (ECF No. 142). [redacted]

[redacted]

On February 15, 2024, Nichols filed a Mediation Report with this Court stating: "The conflict has been completely resolved" and that the parties would submit a Stipulation Agreement and/or Notice of Dismissal. (ECF No. 142 (the "Mediation Report")). (An identical report was

filed with the Superior Court in *Cotto II*).

██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

Plaintiffs were later informed that the TJS Defendants and Citadel were attempting to work out some issues between them that were related to a case pending in the Eastern District of Louisiana. (*Id.*; *see also* ECF No. 145 ¶ 2).

That same day, April 5, 2024, the Court issued an order directing the parties, no later than April 19, 2024, to file a joint stipulation of dismissal. (ECF No. 143). Accordingly, on April 19, 2024, the parties filed a Joint Motion to Extend Time to File Stipulation of Dismissal, which affirmed that the parties in the case had "reached a [MSA] on February 13, 2024" and that the parties "have been working towards drafting a final settlement agreement consistent with the terms of the MSA." (*See* ECF No. 144). No party opposed the Joint Motion. ████████████████

████████████████████████████████████████████████

█████████ But, as the Contributing Defendants did not deliver a signed Mutual Release, let alone make payment, the parties continued filing joint motions to extend the time to file a stipulation of

dismissal. In total, eight such joint motions were filed. (*See* ECF Nos. 145, 147, 149, 152, 156, 158, 160). No party objected to any of these joint motions.

On December 30, 2024, the Court held a status conference to discuss the mediated settlement. (ECF No. 170). No party contested that the parties had reached an enforceable agreement through the mediation. The Court directed Plaintiffs to submit a motion to enforce on or before February 3, 2025, and set deadlines for other filings.[2]

## LEGAL STANDARD

It is axiomatic that "[a]n agreement to settle a law suit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing." *Herman*, 2012 WL 4476656, at *4 (quoting *Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir.1970)). "Settlement agreements are encouraged as a matter of public policy because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by courts." *Id.* (quoting *D.R. by M.R. v. East Brunswick Bd. of Educ.*, 109 F.3d 896, 901 (3d Cir. 1997)).

This Court applies Virgin Islands law and contract principles in determining the construction and enforcement of mediated settlement agreements. *See Rivera*, 2021 WL 2228492, at *7 (finding the parties entered a binding contract under Virgin Islands law). *See also Boynes v.*

---

[2] After the mediation, Nichols also filed a Mediation Report in the Superior Court case (*Cotto II*, Case No. ST-2022-CV-00073 (V.I. Super. Feb. 15, 2024)) stating that the "conflict has been completely resolved." On February 29, 2024, Plaintiffs filed a Notice Regarding the Status of Mediation, in which they "confirm[ed] that a settlement of all claims was reached between the parties at the mediation on February 13, 2024." A copy is attached as **Exhibit 1**. In response, the Superior Court issued an order requiring submission of stipulations for dismissal. On April 30, 2024, the parties filed a joint motion for an extension of time, and then filed seven subsequent such requests, each time stating that the parties had reached a mediated settlement agreement and "had been working towards drafting a final settlement agreement consistent with the terms of the MSA." No party objected to these joint motions to extend the deadline to file stipulations of dismissal. Copies of the joint motions are attached as **Exhibit 2**. After the eighth joint motion was filed in November 2024, the Superior Court set a status conference for December 16, 2024. Once again, no party disputed that the parties had reached an enforceable agreement through the mediation. A transcript of that proceeding is attached as **Exhibit 3**.

*Transp. Servs. of St. John*, 60 V.I. 453, 459 (2014) ("A mediated settlement agreement is an enforceable contract governed by basic contract principles.").

In the Virgin Islands, an enforceable contract requires "a bargained-for legal benefit or detriment, commonly known as consideration, and a manifestation of mutual assent." *Julien v. Matthew*, 78 V.I. 947, 2024 VI 15, ¶ 23 (2024) (citing Restatement (Second) of Contracts (1981)). "'Consideration' requires a performance or a return promise that has been bargained for." *Id.* (internal quotations omitted).

"A settlement agreement once entered into, cannot be repudiated by either party and will be summarily enforced. To permit such behavior would undercut the strong policy of encouraging settlement agreements." *Boynes*, 60 V.I. at 460–461 (internal quotations and citations omitted). *See also Govia*, 2003 WL 21104925, at *3 (parties "cannot summarily change their minds at the 'eleventh hour' after reaching a binding settlement agreement.")

In interpreting a mediated agreement, "[w]here the language ... is clear and unambiguous, the parties' intent must be derived from the plain meaning of the contract's terms." *Hendricks*, 2019 VI SUPER at ¶ 7 (citing *Weary v. Long Reef Condo. Ass'n*, 57 V.I. 163, 169–170 (2012)). In such a case, the meaning of a contract's terms is a question of law. *Id.*, ¶ 7 (citing *Phillip v. Marsh-Monsanto*, 66 V.I. 612, 624 (V.I. 2017)).

Local Rule 3.2(m) requires each party to a mediation to participate in good faith and permits the Court to impose sanctions on any party who fails to do so without good cause. LRCi 3.2(m). Furthermore, "[i]n the Virgin Islands, every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." *Arvidson v. Bucher*, Case No. ST-16-CV-410, 2019 WL 4307580, at *23 (V.I. Super. Sept. 10, 2019) (quoting *Basic Services, Inc. v. Government of the Virgin Islands*, Case No. 2017-0084, 2019 WL 2488037, at *4 (V.I. June

13, 2019)), *see also Govia*, 2003 WL 21104925, at *3 (when the parties execute a mediated settlement agreement, they are "charged with a duty of good faith and fair dealing."). The implied covenant is breached where "one party acts in a way that deprives another party of the benefits for which it bargained." *Smith v. Meade*, No. CV 2021-76, 2022 WL 872196, at *3 (D.V.I. Mar. 24, 2022) (citing *Arvidson*, 2019 WL 4307580, at *23).

<div align="center">

**ARGUMENT**

</div>

1. **The MSA constitutes an enforceable agreement because it was agreed to by all parties and there was consideration by both sides.**

A mediated settlement agreement constitutes a valid, enforceable contract when two conditions are met: "there is a manifestation of mutual assent to the exchange and a consideration." *Herman*, 2012 WL 4476656, at *4 (quoting *Univ. of the V.I. v. Petersen–Springer*, 232 F.Supp.2d 462, 469 (D.V.I. App. Div. 2002); Restatement (Second) of Contracts § 17 (1981)). "Acceptance is measured not by the parties' subjective intent, but rather by their outward expression of assent." *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 221 (3d Cir. 2008) (applying Virgin Islands law). This Court has noted that "a party's signature on a contract is a clear manifestation of assent." *Rivera*, 2021 WL 2228492, at *8 (internal quotations omitted).

In this instance, each party to the MSA either signed the actual agreement and/or sent an email to all parties and the mediator explicitly consenting to the MSA. (*See* MSA). Hence, the parties clearly manifested their asset to the terms of the MSA. Furthermore, after Nichols filed a Mediation Report with this Court stating that "[t]he conflict has been completely resolved," no party ever objected to this representation. *See Govia*, 2003 WL 21104925, at *3 (finding mediated settlement agreement enforceable where the party "never expressed or articulated any dissatisfaction, disagreement or objection to the terms of the settlement agreement"). In fact, in the numerous joint motions filed with this Court, each of the parties to the MSA continued to express

<div align="center">

7

</div>

that an MSA had been reached and only the details remained to be worked out. During these nine months, no party objected to these joint motions or contended that in fact no agreement had been reached. *See, e.g., United States v. Ma*, No. 1:22-CV-145-RP, 2024 WL 3403753, at *7 (W.D. Tex. July 12, 2024) (lack of objection to mediator report that matter fully resolved indicates agreement that case was settled). Accordingly, there can be no dispute that the parties to the MSA assented to the terms of that agreement.

The MSA also meets the second precondition for an enforceable agreement because it clearly involves consideration by all parties. Specifically, Plaintiffs agreed to release all their claims in all proceedings in exchange for payment of the agreed-upon sum by the Contributing Defendants. *E.g., Rivera*, 2021 WL 2228492, at *9 (releasing claims in exchange for a monetary sum demonstrates the existence of consideration); *Siclari*, 2017 WL 5162806, at *3 (same).

### 2. The Parties were required to mediate in good faith and have a duty of good faith and fair dealing in implementing the MSA.

Rule 3.2(m) of the Local Rules of Civil Procedure requires that parties to a mediation participate in good faith. *See* LRCi 3.2(m) ("If a party, without good cause … fails to participate in the mediation in good faith, the Court may impose sanctions, including an award of mediator and attorney fees and other costs.").

As stated above, every contract in the Virgin Islands, including mediated settlement agreements, impose an implied duty of good faith and fair dealing upon the parties. *Govia*, 2003 WL 21104925, at *3 (enforcing mediated settlement agreement because, when the parties executed the agreement, they "were charged with a duty of good faith and fair dealing in its enforcement"). "Breach of this implied covenant occurs when one party acts in a way that deprives another party of the benefits for which it bargained… [including by] commit[ing] acts that amount to … 'an unreasonable contravention of the Parties' reasonable expectations under the contract.'" *Smith*,

2022 WL 872196, at *3 (quoting *Stapleton v. WenVI, Inc.*, 2014 WL 3765855, at *3 (D.V.I. July 30, 2014)).

After the Parties executed the MSA, they had a duty of good faith and fair dealing that required them to comply with the agreement. Plaintiffs negotiated the terms of a mutual release in good faith. However, the Defendants have not executed a mutual release and paid the monies as required by the MSA, and thus Plaintiffs' reasonable expectation of receiving a signed release and full payment of the negotiated amount has been obstructed. Accordingly, the Court should order the Defendants to execute the mutual releases and pay the amounts owed. *See, e.g., Portland Marche, LLC v. Fed. Nat'l Mortg. Ass'n*, No. 3:21-CV-00569-IM, 2023 WL 8543038, at *5 (D. Or. Dec. 11, 2023) (granting motion to enforce settlement agreement because parties were bound by the essential terms of the agreement and obligated to negotiate the additional terms in good faith); *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633 (6th Cir. 2001) (affirming the enforcement of a settlement agreement agreed to in court where the party refused to sign the contemplated formal settlement agreement or final releases); *Columbia Gas Transmission, LLC v. Singh*, No. 2:11-CV-485, 2012 WL 1020249, at *8 (S.D. Ohio Mar. 26, 2012), *rev'd on other grounds,* 707 F.3d 583 (6th Cir. 2013) (granting motion to enforce settlement agreement where the parties "agreed to work together in good faith to memorialize the [settlement] agreement" and defendants subsequently failed to work with plaintiffs to memorialize the agreement).

3. **This Court should issue an order directing the parties to comply with the MSA and retain jurisdiction over the case.**

In light of Defendants' failure to fulfill their obligations under the MSA, Plaintiffs request that this Court issue an order directing the parties to the MSA to comply with its terms and retaining jurisdiction over the matter for a period of sixty days to enforce the MSA. Such an order has been issued in similar cases by both this Court and by the Virgin Islands Superior Court, and would

facilitate the efficient resolution of the instant matter. *See, e.g.*, *Nicholas v. Wyndham Int'l, Inc.*, No. CIV. 2001-147, (D.V.I. Nov. 30, 2007), ECF No. 1201 (attached as **Exhibit 4**) (approving the parties' settlement agreement and retaining jurisdiction for sixty days), *see also Dorsey v. Vitelcom, Inc.*, No. ST-91-CV-513 (V.I. Super. Dec. 22, 2017) (attached as **Exhibit 5**) (granting motion to enforce mediated settlement agreement and retaining jurisdiction for a period of ninety days).

**CONCLUSION**

For the foregoing reasons, the Court should grant this Motion by Plaintiffs to enforce the MSA. A proposed order is also being filed along with this Motion.

February 3, 2025                    Respectfully submitted,

                                   */s/ Aaron Halegua*
                                      Aaron Halegua

**AARON HALEGUA, PLLC**
Aaron Halegua
*Admitted Pro Hac Vice*
524 Broadway, 11th Floor
New York, NY 10012
(646) 854-9061
ah@aaronhalegua.com

**KESSLER MATURA P.C.**
Troy L. Kessler
*Admitted Pro Hac Vice*
534 Broadhollow Road, Suite 275
Melville, NY 11747
(631) 499-9100
tkessler@kesslermatura.com

*/s/ Peter J. Lynch*
   Peter J. Lynch

**FULLER & LYNCH ADVOCACY GROUP, PLLC**
Peter J. Lynch
VI Bar No. 1256
PO Box 303300
St. Thomas, VI 00803
(340) 776-7801
pete@flaglawvi.com

*Attorneys for Plaintiffs*

11

<u>**CERTIFICATION UNDER LOCAL RULE 7.1(f)**</u>

Pursuant to Local Rule 7.1(f), prior to the filing of this Motion, Plaintiffs sought the concurrence of the other parties in this case. In response, Defendants Citadel, AECOM, AECOM Caribe, LLP, and Celestino White stated that they had no objection to the Motion. Defendant Leonard Ramsey did not respond. Counsel for Defendants Thomas J. Sutton and TJ Sutton Enterprises, LLC stated that "I have been unable to discuss this with my client so I cannot communicate a position from my client on this matter."


February 3, 2025                    */s/ Aaron Halegua*
                                    Aaron Halegua